PARSONS *v.* THE STATE.

Betting on the result of an election is an indictable offence.

All wagering contracts are void by statute.

Sums of money stated in an indictment need not be proved as laid, unless they form part of the description of a written instrument, or the exact sum be of the essence of the offence.

In an indictment for winning a certain sum of money, the prosecutor may prove the winning of a smaller sum.

A. sold a horse to the defendant for 65 dollars payable when General *Taylor* should be elected president of the *United States,* which sum the defendant subsequently paid. The horse was worth 50 dollars. *Held,* that the transaction was a wager.

ERROR to the *Rush* Circuit Court.

BLACKFORD, J.—This was an indictment, found at the *April* term, 1849, against *Mathias Parsons.* The offence charged is, that the defendant, on the 7th of *November,* 1848, at, &c., did unlawfully lose to *Richard F. Brown* 25 dollars, by then and there unlawfully betting and wagering said sum with him on the result of an election for president of the *United States,* then pending, in which *Lewis Cass* and *Zachary Taylor* were candidates, contrary to the form of the statute.

Plea, not guilty. Verdict for the state and fine of one dollar. Motion for a new trial overruled, and judgment on the verdict.

Two witnesses only were examined on the trial. One of them was *Brown,* who is mentioned in the indictment. He said that on the day of the presidential election in

May Term, 1851.

Parsons
v.
The State.

1848, he sold the defendant a mare for 65 dollars, payable when General *Taylor* should be elected president of the *United States;* that, on the 5th of *December*, 1848, the defendant paid 32 dollars and 50 cents on the mare, and that the residue of the note (given for the price of the mare) had been settled. The witness also said, that he thought 50 dollars a pretty good price for the mare; that he would have taken less than 65 dollars for her without the condition, but that he did not consider the price double value, the way property sold on elections. The other witness said that he thought the mare worth 65 dollars, and that he would give that sum for her. The transaction took place in *Rush* county.

The first question is whether the offence laid in the indictment, viz., the losing of money by betting on the result of an election, is indictable.

The statute on the subject says, that every person who shall, by playing or betting at or upon any game or wager whatever, either lose or win any sum of money or article of value, shall, upon conviction thereof, be fined in any sum not exceeding 50 dollars. R. S. 1843, p. 980. This statute, as we understand it, prohibits not only all games but all wagers for anything of value. This construction is strengthened by the circumstance that, by a previous statute, all wagering contracts are declared void. R. S. 1843, p. 593. The cases of *Tate* v. *The State*, 5 Blackf. 174, and *Bellair* v. *The State*, 6 id. 104, which were indictments relative to wagers on elections, under the statute of 1838, seem to imply that the indictments, had they been properly drawn, would have been sustained. There is also a case, under the statute of 1838, in which an indictment for winning treasury notes, by betting on the result of an election, was sustained. *The State* v. *Little*, 6 Blackf. 267. The statute of 1838, as to this offence, is the same with that of 1843. R. S. 1838, p. 217.

We must next inquire whether the facts proved show, that the defendant lost money by a wager with *Brown* on the result of said election?

That the transaction in question was a wager appears

by the following authorities: Assumpsit. In considera-
tion of 20*s.* paid to the defendant by the plaintiff,
the defendant promised to pay the plaintiff 20*l.*, if *Charles
Stuart* should be king of *England* within twelve months.
*Andrews* v. *Herne*, 1 Lev. 33. That contract was con-
sidered a wager in *Gilbert* v. *Sykes*, 16 East, 377. As-
sumpsit on a promissory note. The note was as follows:
" *Haverhill, N. H. Oct.* 16, 1840. For value received, I
promise to pay *Samuel Danforth* or order 50 dollars on the
day that *Martin Van Buren* is re-elected president of the
*United States*, with interest annually. *Eli L. Evans.*"
That note was given for a horse worth from 20 to 25 dol-
lars. The horse was to be retained by the defendant,
and was only paid for by the note. The note was only
to be paid by the defendant on the happening of the con-
tingency named in the note. The jury found for the de-
fendant, and the plaintiff excepted. The Court said,
" We do not hesitate to regard the note, after the finding
of the jury, as having been given upon a wagering con-
tract and void. It possesses all the elements that are ne-
cessary to constitute any wager. But a wager, though
called by any other name, is none the less immoral and
opposed to law. It is a wager still. This note was given
for a horse, but the horse was worth but half the amount
of the note; the defendant took the horse in exchange for
the note, and whether he was to be liable to pay the note
depended upon the result of a pending election." *Dan-
forth* v. *Evans*, 16 Vermont, 538. Assumpsit on a note
as follows: " *Standish, August* 1, 1840. For value re-
ceived, we jointly and severally promise to pay *Moses R.
Marean* or order 100 dollars and interest, to be paid when
*Martin Van Buren* is elected president of these *United
States*, if so be he should be elected at the presidential
election in *November* next, if the said *Martin Van Buren*
should live until that time.—*Benjamin Longley, Nathaniel
Bacon, Charles Barrell.*" The facts were, that the plain-
tiff, on said day, offered to dispose of his horse to the de-
fendants, and received therefor the note sued on. The
horse was delivered to the defendants. That transaction

was held to be a wager. The Court said, "It cannot be winked out of sight, that this was nothing more nor less, in the contemplation of the parties, than a bet upon the event of the then pending election for the presidency of the *United States*." *Marean* v. *Longley et al.*, 21 Maine, 26. So, where *A.* conveyed to *B.* a tract of land, and *B.* gave to *A.* promissory notes for the value of the land, promising to pay when *James K. Polk* was elected president of the *United States*, the transaction was held to be a wager and the notes void. *Tramwell* v. *Gordon*, 11 Alabama, 656.

In the case before us, the defendent, in consideration of the mare sold to him by *Brown*, promised *Brown* to pay him 65 dollars when General *Taylor* should be elected president of the *United States*. The authorities we have referred to show that that contract was a wager on the result of the election. The defendant lost the bet, General *Taylor*, as the history of the country shows, having been elected. After the election, the defendant paid the 65 dollars according to the contract.

The last question relates to the proof of the amount alleged to have been bet and lost by the defendant.

The allegation as to the amount bet is surplusage, and may be struck out of the indictment. The precedents of indictments for winning money by betting are silent as to the amount bet. They only charge that the defendant won so much money by betting on the side, &c. 3 Chit. Crim. Law, 679. But it is contended that, at any rate, the exact sum charged to have been lost should have been proved. According to *Brown's* testimony, on which the jury had a right to rely, the sum which the defendant, in consequence of the wager, paid for the mare was more than she was worth; and, of course, he lost the excess. That witness states that 50 dollars would have been a pretty good price for the mare. Considering that to have been her cash value, the defendant lost less than the amount charged. But we do not think that proof of the loss of the exact sum charged was necessary. Proof of the loss of a less sum was sufficient. It is a general rule

that sums of money stated in an indictment need not be proved as laid, unless they form part of the description of a written instrument, or the exact sum be of the essence of the offence. Arch. Crim. Plead. 101. In the present case, the essence of the offence does not consist in the particular amount lost, nor does the quantum of the punishment depend on such amount. The only question for the jury was, did the defendant lose the money named in the indictment, or any part of it, by betting with *Brown* on said election? There are the following cases on this point: On an indictment for extorsively taking twenty shillings, proof of the taking of one shilling is sufficient. Per *Holt*, C. J., in *Rex* v. *Burdett*, 1 Ld. Raym. 148. So, on an indictment for taking a certain sum as brokerage, contrary to the statute, you need not prove that the defendant took the exact sum laid in the indictment. *The King* v. *Gillham*, 6 T. R. 265. It has also been held that on an indictment for winning a certain sum against the statute of *Anne*, the prosecutor may prove the winning of a smaller sum. *Rex* v. *Hill et al.*, 1 Stark. Rep. 359.

We are, therefore, of opinion that there is no error in this case.

*Per Curiam.*—The judgment is affirmed with costs.

*R. D. Logan*, for the plaintiff.

*D. Wallace*, for the state.