(Decided 21st December, 1882.)

MICHELARCANGELO MERLUZZI *vs.* WILLIAM E. GLEESON, named Executor in the paper propounded as the will of NICHOLAS ANTONIO MERLUZZI.

*Privilege of Witness in respect of Questions, which tend, if answered affirmatively, to Degrade and disgrace him.*

Where a witness on cross-examination, being asked questions which, if answered affirmatively, would tend to degrade and disgrace him, avails himself of the privilege accorded him by the Court, and declines to answer, he cannot rightly be asked, "why do you decline to answer these questions?" When he has declined to answer he has done all that the rule of law requires him to do.

APPEAL from the Circuit Court for Howard County.

On the 8th of January, 1881, the appellee filed in the Orphans' Court of Baltimore City the will of Nicholas Antonio Merluzzi, who died in that city on or about the 31st of December, 1880. Some time afterwards, the appellant, claiming to be a nephew of the half blood of the testator, filed a caveat against the probate of the will, and upon his caveat issues were framed, and sent for trial to the Baltimore City Court, whence the record was removed, upon the suggestion and affidavit of the appellee, to the Circuit Court for Howard County. The case was tried at the March Term, 1882, of that Court, and resulted in a verdict for the caveator on the first issue, and for the caveatee on all the other issues.

*Exception.*—The caveatee was examined as a witness on his own behalf. On cross-examination he was asked a question, and before it was answered, the counsel for the caveatee interposed and objected to its being asked or answered, but the Court being of opinion and having declared that the rule of law in reference to questions of this character, when it was obvious that an affirmative answer would tend to degrade and disgrace the witness, was to allow the same to be asked by the cross-examining counsel, but that the witness was at liberty to answer the same or not, as he pleased, thereupon allowed this question to be asked, but told the witness he could answer the same or not, as he chose, and the witness thereupon said, "I decline to answer that question." Counsel for the caveator then propounded to the witness a number of questions, to each of which he gave the same answer. He was then asked whether he had not committed each and every one of the several acts inquired about, and to each interrogatory he answered, "I decline to answer that question." The witness was then asked, as follows: "Mr. Gleeson, you have declined to answer all of these questions touching the various charges against you, and all the ques-

tions as to whether you committed the various acts involved in the charges, now, why do you decline to answer each and all of these questions?" The counsel for the caveatee objected to the asking and answering of the question, and the Court (MILLER, J.,) sustained the objection, and the counsel for the caveator thereupon excepted, and took this appeal.

The cause was argued before ALVEY, STONE, ROBINSON,. IRVING, and RITCHIE, J.

*Richard M. McSherry,* and *Richard M. Venable,* for the appellant.

*Henry E. Wootton,* and *John P. Poe,* for the appellee..

STONE, J., delivered the opinion of the Court.

Upon the cross-examination of the witness Gleeson, six questions were asked him, which manifestly tended, if the answers were in the affirmative, to degrade and disgrace him. The Court thereupon informed the witness that he was at liberty to answer the questions or not as he pleased. Availing himself of the privilege thus accorded him by the Court, the witness to each of the questions replied, "I. decline to answer that question." No exception was taken to the ruling of the Court on that point, and its correctness is not now before us for decision. But after the witness had thus availed himself of the privilege so granted him by the Court, and had declined to answer, he was then asked the following question:

"Mr. Gleeson you have declined to answer all these questions, touching the various charges against you, and all the questions as to whether you committed the various acts involved in the charges, now, why do you decline to answer each and all of these questions?"

This question was objected to, and the Court sustained the objection, and refused to allow the question to be

Merluzzi *vs.* Gleeson.

asked; and to this refusal exception was taken, and the correctness of this ruling is the only question we have to decide in this case.

It was the conceded law of this case—conceded because unexcepted to—that the witness had the right to refuse to answer the several questions which had previously been propounded to him. The Court had already announced that the reason why the witness could decline to answer the questions, was, that an affirmative answer would tend to degrade and disgrace him. When the witness in response to the announcement made by the Court to him, that he might decline to answer because the question tended to degrade and disgrace him, did decline to answer, he did in effect assign the reason for his declension. It was the province of the Court to extend the privilege to the witness, and to assign the reason therefor, and when the Court had done so, and had informed the witness that he need not answer, it was entirely superfluous to inquire of him *why* he did not answer.

But apart from this, a witness who is protected (as this one was) from answering certain questions, should be fully protected. When he has declined to answer, he has done all that the rule of law requires him to do. If it were allowable to compel him to give reasons for his silence, it would follow that his reasons would be a fair subject of comment and criticism before the jury. The party cross-examining would seek to draw from them, conclusions adverse to the witness, and would thus be enabled, in some measure at least, to do indirectly, what the law prohibited him from doing directly. Such a course would render the privilege valueless to a witness.

*Ruling affirmed, and*
*cause remanded.*

(Decided 21st December, 1882.)